IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOYDD DEMETRIUS IRVING,<br><br>Petitioner,<br><br>vs.<br><br>PEOPLE OF THE STATE OF CALIFORNIA, et al.,<br><br>Respondents.<br>_____ / | No. CIV S-05-1621-LKK-CMK-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's amended petition for a writ of habeas corpus (Doc. 16) and respondents' answer (Doc. 21). Despite having been granted numerous extensions of time to do so, petitioner has not filed a traverse.

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

The state court recited the following background:

> Defendant Boydd Demetrius Irving was convicted by a jury of five counts of forcible oral copulation . . ., 11 counts of sexual penetration . . ., and one count of rape . . ., with an enhancement alleged as to each count for being armed with a deadly weapon. . . . Sentenced to 32 years in state prison, defendant appeals, contending the trial court made the following errors: (1) it failed to allow him to represent himself at his first trial; (2) it failed to reappoint counsel upon his request prior to his second trial; (3) it failed to hold a hearing when his in pro. per. privileges were revoked; and (4) it denied his request for a transcript of his first trial. . . .
>
> * * *
>
> A discussion of the facts underlying the offenses is not necessary to our analysis of the issues raised on appeal. Therefore, we summarize only the relevant procedural history. Defendant was arraigned on the initial complaint in May 2001. Shortly after the arraignment, defendant's appointed attorney expressed doubt as to his competence to stand trial. However, based on the reports of two doctors, defendant was found competent in September 2001. Between September 2001 and December 2001, defendant brought repeated *Marsden* motions concerning his attorneys, claiming that he was not being provided competent representation. All of these motions were denied.

In a foot note, the state court observed that, under People v. Marsden, 2 Cal.3d 118, 123-26 (1970), when a criminal defendant seeks a new attorney based upon a claim that his appointed counsel is incompetent, the trial court must inquire into the reasons for the defendant's dissatisfaction with counsel. The state court then continued with its procedural summary:

> During a *Marsden* hearing in December 2001, doubts were again raised as to defendant's competency to stand trial. Defendant's attorney informed the court he had observed "indications" that defendant had a "mental condition[], or [was] in a state of a breakdown." He also directed the court's attention to a letter defendant had sent to another judge the previous month, which the court noted was "rambling" and contained defendant's "own description of his psychological condition."
> Noting it was unusual to suspend the proceedings twice for a competency evaluation, the trial court found, nonetheless, that defendant's recent activity compelled another evaluation. The trial court appointed two doctors to evaluate defendant and ordered the proceedings suspended. Following this order, defendant asked if he could "go pro. per." The trial court responded: "Not today, sir." In January 2002, defendant again was found competent. His first trial occurred in March 2002. The jury was unable to reach a verdict on any of the counts, and a mistrial was declared.

|   |   |
|---|---|
| 1 | On May 7, 2002, defendant made another request to represent himself, which was granted.  The trial was continued two weeks at defendant's request so that he could prepare.  Defendant's attorney advised the trial court that he was awaiting a transcript of the alleged victim's testimony from the first trial and that he would forward it to defendant once he received it.  Defendant confirmed that he had "been waiting on that for the last six weeks." |

On May 7, 2002, defendant made another request to represent himself, which was granted.  The trial was continued two weeks at defendant's request so that he could prepare.  Defendant's attorney advised the trial court that he was awaiting a transcript of the alleged victim's testimony from the first trial and that he would forward it to defendant once he received it.  Defendant confirmed that he had "been waiting on that for the last six weeks."

Petitioner was provided a copy of the court's May 7, 2002, order concerning his pro. per. status (hereafter the pro. per. order).  The pro. per. order stated that defendant was to be allowed specified privileges, including the use of legal research materials, access to the telephone, and visits with investigators and witnesses in connection with the preparation of his case.  However, the order contained the following provision on suspension of privileges: "The Sheriff is authorized, upon good cause, to suspend any and all of the above ordered privileges. The Sheriff shall immediately advise the defendant of any such suspension of privileges.  A suspension in any degree shall immediately be reported to the court so that a hearing may be held thereon forthwith so as to avoid any delays in the trial of this case."

On Monday, May 20, 2002, defendant advised the trial court that his pro. per. privileges had been revoked on May 9, 2002, two days after the previous hearing.  According to the prosecuting attorney, defendant's privileges were revoked because he received "12 major write-ups" while in custody, for conduct that included assaulting jail staff and possessing "weapons and explosive device making materials in his cell." The prosecuting attorney reported that there had been a hearing in the jail concerning defendant's privileges, at which defendant had refused to provide any information.  When the trial court asked defendant if he wanted to add anything, defendant responded that the jail hearing was "inaccurate," that he was "being singled out by law enforcement" and that he was "being racially profiled."

The trial court denied defendant's request for a continuance, and defendant's matter was transferred to a trial department.

At the pretrial conference the afternoon of May 20, 2002, defendant made another request to continue the trial, indicating that he was not prepared to proceed because his pro. per. privileges had been revoked. Defendant also requested "transcripts of prior proceedings."  The trial court noted there was no request for a transcript in the court's file and informed defendant it was his responsibility to arrange for the transcript prior to trial.  The court took defendant's request for a continuance under submission and told defendant he would have time to prepare during jury selection and opening statements.

Jury selection began the following day, May 21, 2002.  The next day, defendant again requested a continuance, this time based on additional discovery he claimed he had just been provided.  Defendant later explained that he had been given the discovery previously but he had not had an opportunity to review it.  After the trial court denied his request, defendant said he was "in over [his] head," and he requested to "withdraw [his] pro. per. [status]."  Defendant also reiterated he felt unprepared because his pro. per. privileges had been suspended.  However, defendant indicated he did not want his former attorney to represent him.

3

   Later that day, defendant's former attorney advised the trial court that he could resume representation of defendant but that he would be unavailable for trial for several months. Defendant then informed the court that he felt he could represent himself if the court would grant him sufficient time to prepare. Defendant confirmed that he understood his right to have an attorney appointed to represent him and that he wanted the court to continue the matter so that he could review additional evidence and prepare for trial.

   Jury selection was completed on May 23, 2002, and the trial court continued the matter to June 3, 2002, giving defendant 15 days from the date his pro. per. privileges were restored on May 19, 2002, to prepare for trial.

   At a hearing on May 29, 2002, defendant acknowledged he had received a transcript of the alleged victim's trial testimony on May 24, 2002. Defendant filed several motions, including a motion for a continuance and a motion for transcripts of proceedings between November 8, 2001, and February 28, 2002 [dates prior to his first trial].

   The trial court ruled on defendants's motions the following day, May 30, 2002. Prior to ruling on defendant's request for a continuance, the trial court asked defendant if he had anything to add to his motion. In addition to asserting that the transcript he had been provided was "inaccurate," defendant said that he was not emotionally stable enough to represent himself. He asked the trial court to appoint counsel for his defense. The trial court refused to appoint counsel, noting that it saw the request "as a delaying tactic." The court also denied as untimely defendant's request for a continuance. The matter proceeded to trial, and defendant was found guilty as previously described.

Petitioner's conviction and sentence were affirmed on direct appeal by the California Court of Appeal in a reasoned decision. The California Supreme Court denied direct review without comment or citation.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001). Thus, under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means only those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

/ / /

/ / /

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be

found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner raises three claims of trial court error. Specifically, he claims: (1) the trial court erred in denying his motion for a complete transcript of the first trial; (2) the trial court erred in denying his request to appoint new counsel at the second trial; and (3) the trial court erred in failing to hold a hearing regarding revocation of his pro se privileges. Petitioner does not raise in this case the fourth issue presented to the state court – that the trial court erred because it failed to allow him to represent himself at his first trial.

/ / /

/ / /

/ / /

1     **A.**     <u>**Transcripts**</u>

2         Petitioner argues:

> By failing to provide appellant a full and complete transcript of the first trial which ended in a mistrial. Equal Protection principles required the provision of such transcripts to indigent defendants when needed for an effective defense. Appellant's constitutional right to Equal Protection of the laws were violated.

As to this claim, the state court concluded:

> Defendant contends the trial court erred by denying his request for a complete transcript of his first trial. We disagree.
> Initially, we note it is less than clear that defendant ever requested a complete transcript of his first trial. Defendant was in court on May 7, 2002, when his newly discharged attorney stated he had ordered a transcript of the alleged victim's testimony from the first trial and that he would forward it to defendant upon receiving it. When defendant was asked if he wanted this transcript, he stated he had "been waiting on that for the last six weeks."
> At the hearing on May 20, 2002, at which defendant requested "transcripts of prior proceedings," he stated he had requested "the trial transcript" from his prior attorney while the attorney was still representing him. On May 21, 2002, defendant's prior attorney advised the court that he had ordered a transcript of the alleged victim's testimony, which had not been prepared because the court reporter had been out of the country. Again, defendant made no objection to the fact that only a transcript of the victim's testimony had been requested; to the contrary, he confirmed that the information provided by his prior attorney answered his questions. And defendant's written motion for transcripts, which was filed five days before testimony was to begin, sought transcripts of proceedings occurring prior to the commencement of his first trial. Thus, it appears that defendant never requested a complete transcript.
> Even if defendant's request for "transcripts of prior proceedings" could be construed as a request for a transcript of his first trial, it was untimely. . . . [¶] Defendant suggests he did not request the transcript earlier because he misunderstood that only a portion of the transcript had been ordered. We are not persuaded. Defendant was in court on two occasions when his former attorney stated that he had requested only the alleged victim's testimony from the first trial. On neither occasion did defendant manifest any confusion regarding what portion of the transcript was being prepared. There is no reasonable basis to conclude that defendant misunderstood which transcripts had been requested by his attorney.

///

///

///

1         In Britt v. North Carolina, the Supreme Court held that an indigent defendant has a Sixth Amendment right to a transcript of prior proceedings when the transcript is needed for an effective defense or appeal. See 404 U.S. 226, 227 (1971). Two factors are relevant to determining whether a transcript is necessary: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought; and (2) the availability of alternative devices that would fulfill the same functions as a transcript. See id. A transcript of a prior mistrial would ordinarily be valuable both as a pre-trial discovery device and for impeachment purposes. See id. at 228. A request for transcripts must be clear and unequivocal. See Roberts v. LaVallee, 389 U.S. 40, 42 (1967); see also United States v. Devlin, 13 F.3d 1361, 1364 (9th Cir. 1994). Where a defendant's right to a complete transcript has been violated, but the state has provided a portion of the transcript, the error is subject to harmless error analysis under Brecht. See Kennedy v. Lockyer, 379 F.3d 1041, 1053 (9th Cir. 2004) (citing Brecht v. Abramson, 507 U.S. 619, 627 (1993)).

        Assuming that petitioner's request was for a full transcript, and that the request was timely, the court is persuaded by respondents' argument that the full transcript was not necessary for an effective defense in the second trial. Respondents argue:

> . . . The government's case was built around the testimony of [the victim], and Petitioner had a transcript of her testimony at the first trial. He also had a transcript of the preliminary hearing, in which a sheriff's deputy testified about statements [the victim] made to him about the assault. (citation to the record omitted). Those transcripts offered Petitioner the best avenue for impeaching the [victim], the government's key witness, during the retrial. Further, Petitioner had been provided with all the medical and law-enforcement reports that were prepared by other prosecution witnesses. Those materials offered Petitioner the best leads for any further pre-trial discovery regarding the extent of [the victim's] injuries and other evidence of sexual assault. That is why Petitioner's former counsel requested only a transcript of the victim's testimony from the first trial.

The validity of respondents' argument is borne out by the record from the second trial, which reflects that petitioner was convicted based almost exclusively on the testimony of the victim. On this record, the court cannot say that the Court of Appeal's decision was either contrary to or

an unreasonable application of clearly established law.

### B. Appointment of Counsel

After his first trial, during which petitioner made several unsuccessful motions to substitute counsel, petitioner was granted leave to represent himself at his retrial. After jury selection began on May 21, 2002, petitioner informed the court that he felt he could not adequately represent himself and requested appointment of counsel. The trial court was willing to reappoint former counsel. However, petitioner specifically refused reappointment of his former trial counsel. Instead, petitioner confirmed to the trial court that he understood his right to have former counsel reappointed but that he felt he could represent himself. The trial court granted a continuance to allow petitioner to prepare for trial. Jury selection was completed on May 23, 2002, and trial was set for June 3, 2002.

On May 30, 2002, petitioner informed the trial court that he did not think he could represent himself. He asked the trial court to appoint "assistant counsel." Specifically, the following exchange took place:

> THE DEFENDANT: I would – actually, I would like to request assistant counsel.
>
> THE COURT: You want to request what?
>
> THE DEFENDANT: Assistant counsel.
>
> THE COURT: On what grounds?
>
> THE DEFENDANT: On the grounds that don't I have a right to have an assistant counsel.
>
> THE COURT: You are your own attorney, Mr. Irving. [¶] On what grounds are you requesting assistant counsel?
>
> THE DEFENDANT: To inform me of certain decisions that I'm not really sure of, as representing myself, furthermore, decisions that I'm not quite sure of.
>
> THE COURT: Have you not already represented to the Court several times that you are fully capable of representing yourself in this case? [¶] Are you now saying that you are not, again?

1        THE DEFENDANT:  I'm not saying I'm not, your Honor.  It's just the time consuming here.  It will be Monday morning, and I fully want to be prepared.  With so much going on, under the circumstances, I think assistant counsel would actually be quite beneficial to me.

      THE COURT;  Anything else, any other grounds or reasons?

      THE DEFENDANT:  No.

After a recess, the court took up the matter of petitioner's request, which by this time had morphed into a request for appointment of counsel instead of "assistant counsel." The following exchange took place:

      THE DEFENDANT:  . . . [¶] Furthermore, based on the continuous – I am not emotionally stable to represent myself at this time, and I would like to request appointment of counsel for my defense.

      THE COURT:  . . . Mr. Irving, your oral request today for appointment of new counsel is denied.  For reasons that you have had several opportunities to have a counsel appointed for you.  You have twice knowingly, intelligently, voluntarily waived that.  Once before Judge Cecil on May 7th, one before myself last week.
      The court had brought counsel back for – competent, experienced counsel, knowledgeable about the case.  He was present in the courtroom.  He was willing to go forward on the case.
      You changed your mind again, I believe, because in part you thought you were going to be able to get a Marsden Motion through that procedure, and the court denied that.  You don't get to pick the counsel that you want when you want new counsel.  The court sees this as a delaying tactic on behalf of the defendant, and also a motion to manipulate, so that request, that oral request today is denied.
      Further, with respect to the request regarding advisory counsel, that request that was made yesterday is also – advisory counsel is not required, there's no constitutional right to it.  Defendant does not get to chose if he wants his own counsel or, advisory counsel, again based on the history of this case, the number of Faretta Motions the number of Marsden Motions, the fact that I've brought in competent counsel to take over the case on your behalf.  The counsel who previously tried the case was fully knowledgeable of the case.  And at the time you request – yet again, at the same time to the court that you were fully prepared.  You weren't in over your head.  You were ready to go forward.  I'm going to deny that request for advisory counsel. . . .

The trial court essentially concluded that, to the extent petitioner was entitled to the appointment of counsel, he was only entitled to reappointment of his prior counsel, which petitioner refused. Thus, the trial court denied the appointment of counsel of petitioner's choice, as well as the

11

appointment of any counsel at all to substitute for prior appointed counsel. The case proceeded to the second trial with petitioner representing himself.

Petitioner argues that the trial court erred in this ruling. Specifically, petitioner contends:

> If a pro-per defendant seeks to relinquish responsibility for his own defense and obtain the appointment of counsel to represent him for the remainder of the trial, the trial court must consider the totality of the circumstances in exercising its discretion to substitute appointed counsel.

This claim can be seen as having two possible components. First, petitioner could be asserting that the trial court deprived him of his fundamental right to counsel by not appointing a particular counsel of his choice. Second, he could be asserting that the trial court erred in not appointing any substitute counsel in lieu of his original trial counsel. Petitioner does not raise any challenge to the denial of advisory counsel.

    1.  Right to Counsel of Choice

It is axiomatic that an indigent criminal defendant has a Sixth Amendment right to appointment of counsel. See Gideon v. Wainwright, 372 U.S. 335 (1963). However, this right does not guarantee that a "defendant will . . . be represented by the lawyer he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). Citing Faretta v. California, 422 U.S. 806 (1975), the Court further explained that "a criminal defendant has a Sixth Amendment right to represent himself if he voluntarily elects to do so" but that this right "does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel." Id. at 159 n.3.

As to petitioner's right to counsel of his choice, the state court stated:

> Defendant next contends the trial court erred by failing to reappoint counsel to represent him when he made this request prior to his second trial. However, as defendant acknowledges, the trial court was willing to reappoint the attorney who had represented him during his first trial. Consequently, on appeal, defendant makes the untenable argument that he was not only entitled to have counsel reappointed upon his request, but he was also entitled to have an attorney appointed other than his previous counsel. Again, defendant is incorrect.

> In *Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 935, the California Supreme Court, observing that the appointment of counsel for an indigent defendant was within the discretion of the trial court, held "there can be no abuse of that discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." The court clarified this holding in *Harris v. Superior Court* (1977) 19 Cal.3d 786, 799, explaining that "the court's discretion in the appointment of counsel is not to be limited or constrained by a defendant's bare statement of personal preference," unless there are objective considerations (such as the familiarity with the case of the attorney requested) and "no countervailing considerations of comparable weight."
>
> In the present matter, the trial court did not abuse its discretion by seeking to reappoint defendant's previous attorney. This attorney was particularly familiar with defendant's case, having defended him at his first trial. And, although defendant made numerous *Marsden* motions against this attorney, none of his complaints were ever substantiated. Furthermore, defendant had requested a *Marsden* hearing concerning a previous attorney who had been assigned to represent him in the matter and, also, had expressed unwillingness to work with the investigator who was assigned to his case once he was representing himself. In other words, defendant consistently demonstrated dissatisfaction with the trial court's appointments. Given these circumstances, as well as defendant's ever-changing requests concerning self-representation, the trial court acted well within its discretion in determining that defendant's prior attorney, who was familiar with his case and had competently represented him, would be reappointed if defendant no longer felt capable of representing himself. Contrary to defendant's claim, his "problematic relationship" with this attorney, which appears to be solely of his own making, did not entitle him to have alternate counsel appointed.

In concluding that petitioner did not have the right to appointed counsel of his choice, the state court correctly applied the correct Supreme Court rule from Wheat. Thus, its decision is neither contrary to nor an unreasonable application of clearly established law as announced by the Supreme Court.

2.      Substitution of Counsel

"A State has a duty to provide an indigent defendant with effective assistance of counsel through his first appeal." Hendricks v. Zenon, 993 F.2d 664, 669 (9th Cir. 1993) (citing Douglas v. California, 372 U.S. 353, 358 (1963)). In California, a criminal defendant who is dissatisfied with court-appointed counsel must be permitted to state the reasons why the defendant believes the attorney should be replaced. See People v. Marsden, 2 Cal.3d 118, 123-

1  24 (1970). When a defendant seeks to discharge counsel and substitute another attorney on the
2  ground of inadequate representation, the court is required to allow the defendant to explain the
3  basis for the motion and relate specific instances of the attorney's deficient performance. See id.
4  Denial of a Marsden motion can only amount to a constitutional violation where there was a
5  conflict between the defendant and counsel which prevented effective representation. See Schell
6  v. Witek, 218 F.3d 1017, 1026 (9th cir. 2000) (en banc).

7       As discussed above, the court concludes that the state court did not err in
8  determining that petitioner's Sixth Amendment rights were not violated when the trial court
9  declined to appoint counsel of his choice. This raises the question whether petitioner's
10 constitutional rights were violated when the trial court declined to appoint any substitute counsel
11 at all, concluding instead that petitioner was entitled only to reappointment of prior counsel,
12 which petitioner refused. The facts of this case reflect that petitioner had ample opportunities to
13 argue the Marsden factors favoring appointment of substitute counsel. The facts also reflect that
14 petitioner failed to demonstrate any conflict preventing effective representation. To the contrary,
15 prior appointed counsel was well aware of petitioner's case and was in the best position to
16 proceed with the retrial. Finally, the facts reflect that petitioner had the opportunity to have prior
17 counsel reappointed but declined on several occasions. In sum, petitioner did not have the right
18 to counsel of his choice, did not establish a conflict justifying substitute counsel, and waived his
19 right to appointment of prior counsel. On this record, the court cannot say that the state court's
20 decision regarding substitute counsel was either contrary to or an unreasonable application of
21 clearly established law.

22     **C.  Pro Se Privileges**

23     Petitioner asserts:

24         The trial court erred by refusing to hold a prompt hearing into the revocation of appellant's pro-per privileges. Once the court learned that
25     authorities had acted to suspend appellant's pro-per privileges, it should have held a hearing in a timely fashion – such was not done in any fashion,
26     much less a timely one.

> Certainly such a mere exchange of bald allegations, without further inquiry or the calling of witnesses, cannot satisfy the Supreme Court's requirement that court conduct a meaningful judicial review of the Due Process hearing rights accorded to "pro-per" defendants at jail administration evidentiary hearings.
> Thus, the court erred by failing to conduct a proper judicial review of the administrative determination suspending of appellant's privileges.

In rejecting this claim, the state court stated:

> Defendant claims the trial court erred by not holding a hearing after his pro. per. privileges were revoked and by denying him "adequate continuances" to prepare for trial. We find no error.
> In *Wilson* [*v. Superior Court* (1978)] 21 Cal.3d [816] at pages 824-826, our Supreme Court held that an in-custody, pro. per. defendant is entitled to a disciplinary hearing complying with specified procedures before sanctions may be imposed that will impact the defendant's pro. per. privileges. The court expressly rejected the notion that this hearing must be held in court, with the caveat that if "there is no express reservation of condition in the court order granting petitioner full pro. per. privileges," the court must modify the order before privileges are restricted. (*Id.* at p. 827). Even under these circumstances, the evidentiary hearing need not occur in court, "so long as some provision is made for court review of the matter and for the defendant to appear before the court." (*Ibid.*). In a footnote, the court suggested: "Future orders granting pro. per. privileges might be made conditional upon modification of privileges by the sheriff after a hearing on the existence of cause therefor." (*Ibid.*, fn. 14).
> Defendant's pro. per. order contained a provision similar to that suggested in *Wilson*. It authorized the suspension of defendant's pro. per. privileges for good cause. Therefore, a court modification of the pro. per. order was unnecessary. Defendant received a disciplinary hearing, as he was entitled, and he does not claim that this hearing failed to comport with the requirements of *Wilson*.
> Instead, defendant suggests he was entitled to a hearing within three days of the restriction of his pro. per. privileges, relying on language in *Wilson*. (citation omitted). However, the language cited by defendant applies when an emergency requires that an inmate's pro. per. privileges be restricted before a court modification can be obtained. Here, the pro. per. order permitted suspension of defendant's privileges for good cause, obviating the need for a further court order.
> We note that defendant's pro. per. order provided that "[a] suspension [of pro. per. privileges] in any degree shall immediately be reported to the court so that a hearing may be held thereon forthwith so as to avoid any delays in the trial of this case." However, this provision gave the court *discretion* to hold a hearing "forthwith" once defendant's privileges were restricted. Although defendant did not receive immediate court review, the court ultimately heard information about the basis for the restriction of privileges and gave defendant an opportunity to respond.

///

1 | More significantly, the court continued defendant's trial to June 3,
2 | 2002, and was willing to reappoint counsel to represent him.
  | Consequently, when his pro. per. privileges were restored on May 19,
3 | 2002, defendant had 15 days to prepare for trial, which more than
  | compensated for the 10-day period during which his privileges were
4 | suspended. . . .

As respondents note, there is no constitutional right to the kind of court review petitioner says should have occurred in this case. As to jail and prison disciplinary actions, like the revocation of privileges, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 563-70 (1974). Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. A violation of prison regulations does not give rise to a due process claim as long as these minimum protections have been provided. See Walker, 14 F.3d at 1419-20. Petitioner makes no claim in this case that these protections were not provided. Rather, he claims that he was entitled to judicial review. The Supreme Court has never required such review of prison disciplinary proceedings. In any event, the record demonstrates that the trial court did in fact conduct a hearing to review the restrictions imposed.

///

///

///

To the extent petitioner claims an error of state law by arguing that the trial court did not comply with the Wilson requirements, such a claim is not cognizable on federal habeas review. A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972). While a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process," Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941), petitioner has not demonstrated that the delay in judicial review resulted in a due process violation. In particular, this court notes, as did the Court of Appeal, that plaintiff was granted a 15-day continuance in consideration for the 10-day suspension of privileges.

For these reasons, the court concludes that the Court of Appeal's decision was neither contrary to nor an unreasonable application of the law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 29, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE